Filed 1/15/15  Pielstick v. Sagetree Village etc. Community CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| STEPHEN H. PIELSTICK, | B253733 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC478418) |
| v. | |
| SAGETREE VILLAGE MANUFACTURED HOME COMMUNITY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Melvin D. Sandvig, Judge.  Affirmed in part and reversed in part.

Stephen H. Pielstick, in pro. per., and for Plaintiff and Appellant.

Wood, Smith, Henning & Berman, Shannon M. Benbow and Danielle L. Pittsenbarger for Defendant and Respondent.

_____

Plaintiff Stephen H. Pielstick[1] appeals the trial court's dismissal of his complaint for damages arising out of dog bite Stephen Pielstick suffered at defendant Sagetree Village Manufactured Home Community's (Sagetree) mobile home park.  The trial court sustained Sagetree and Serissa Le Fever's demurrer on the grounds that Pielstick's complaint was uncertain and defendants owed no duty to plaintiff.  We reverse in part and affirm in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### 1. *Pielstick's FAC*

Pielstick's claims were based upon three incidents, although only Stephen Pielstick's dog bite injury is at issue on appeal.[2]  Pielstick's FAC stated claims for negligence, loss of consortium, elder abuse, intentional infliction of emotional distress, tortious interference with contract, and slander against Sagetree, its manager Serissa Le Fever, and the tenants Jose and Maria F. Uribe.[3]

Pielstick's FAC alleged that plaintiffs own a mobile home located at Sagetree's mobile home park in Lancaster, California.  Pielstick's home occupied space No. 240.  Defendants Jose and Maria F. Uribe lived next door in space No. 239.  Pielstick rented his unit to the Uribe's daughter, who is also named "Maria Uribe."

On December 21, 2010, Pielstick was retrieving his personal property from the Uribes at their invitation when the Uribes' dog bit him on the hand, causing bodily injury to Pielstick.  Pielstick, who is 73 years old, suffers from memory loss and poor eyesight.

---

[1] The original complaint listed Stephen H. Pielstick as plaintiff.  The first amended complaint (FAC) added his spouse Patricia Pielstick as a plaintiff.  However, the appeal was brought only by Stephen H. Pielstick.  Therefore, when we refer to "Pielstick," we are only referring to Stephen H. Pielstick.

[2] The other two incidents related to a claimed loss of the sale of his trailer due to defendants' conduct and statements, and statements and conduct by defendant Lawrence Hales at a hearing in connection with the sale of the Pielsticks' trailer.

[3] Defendant Le Fever's motion to change venue from the Central District (111 North Hill Street, Los Angeles) to the North District (42011 Fourth Street West, Lancaster) was granted on May 17, 2012.

Pielstick alleges that Sagetree was aware of the violent propensities of a dog owned by the Uribes, and failed to take action.

2. *Defendant's Demurrer*

Sagetree and Le Fever demurred. With respect to the negligence claim (and the attendant loss of consortium claim), defendants contended that these claims failed because the demurring defendants owed no duty to plaintiff to warn of a dangerous animal that Sagetree and Le Fever did not own, but which was being kept by plaintiff's tenant. Defendants also moved to strike plaintiff's punitive damages prayer and portions of the second amended complaint.

In opposition, Pielstick, who appeared in propria persona, argued that (1) the court should inform him of the standard of care the court used in finding that defendants were not negligent in managing the vicious dogs roaming the mobile home park, and defendants had a duty to warn a tenant's invitees of dangerous animals on the premises; (2) no fixed standard existed for determining the amount of damages on a loss of consortium claim. Pielstick further asserted that defendants had been "forum shopping" in changing venue.

Pielstick attached to the complaint a declaration from a security guard at the mobile home park who stated that he approached the owners of the dog who lived in space No. 239 (Jose and Marie Uribe). The Uribe's dog had chased him and attempted to bite him in December 2010. In addition, Donald Jackson, the owner of a cleaning company, stated that on May 22, 2011, he had gone to clean Pielstick's mobile home and as they approached, a small dog in space No. 239 began barking, and Pielstick told him that a similar dog had bitten him. Jackson reported the dog to Le Fever, who told him the park had just gotten rid of a dog that had bitten someone at that unit, but that as of July 1, 2011, Jackson observed the dog was still at space No. 239. Pielstick also submitted a declaration in which he asserted that his tenant was "Maria Uribe," the daughter of Pielstick's next-door neighbors, and not the owner of the vicious dog. The "Maria

3

Uribe" named in the complaint was not his tenant in space 240, but the next-door neighbor in space 239.

In reply, defendants argued that as landlords, they had no duty to prevent injury to the Uribes' invitees and that they did not have actual notice of the Uribe's dog's violent propensities.

The trial court held that Pielstick's negligence claim failed because Pielstick, not defendant Sagetree, was the landlord of the owner of the vicious dog. The court noted that "[a]t one point, [Pielstick] allege[s] that the Uribe defendants resided[d] in the mobile home in the space next to their mobilehome, but also allege that prior to the incident, the Uribe defendants rented [Pielstick's] mobilehome. These allegations add to the uncertainty of the pleading." In conclusion, the court found that Pielstick had failed to allege facts to show that defendants owed a duty to warn of the dangerous propensities of the Uribe defendants' dog.

## DISCUSSION

### I.    Standard of Review

"The function of a demurrer is to test the sufficiency of the complaint as a matter of law," and we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend. (*Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420.) A complaint "is sufficient if it alleges ultimate rather than evidentiary facts," (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550) but the plaintiff must set forth the essential facts of his or her case """"with reasonable precision and with particularity sufficient to acquaint [the] defendant with the nature, source and extent"""" of the plaintiff's claim. (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076, 1099.) Legal conclusions are insufficient. (*Id.* at pp. 1098–1099; *Doe*, at p. 551, fn. 5.) "We assume the truth of the allegations in the complaint, but do not assume the truth of contentions, deductions, or conclusions of law." (*California Logistics, Inc. v. State of California* (2008) 161

4

Cal.App.4th 242, 247.) "The existence and scope of duty are legal questions for the court. [Citation.]" (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 477.)

The trial court errs in sustaining a demurrer "if the plaintiff has stated a cause of action under any possible legal theory, and it is an abuse of discretion for the court to sustain a demurrer without leave to amend if the plaintiff has shown there is a reasonable possibility a defect can be cured by amendment." (*California Logistics, Inc. v. State of California*, *supra*, 161 Cal.App.4th at p. 247.) "To meet the . . . burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action. [Citation.] However, such a showing need not be made in the trial court so long as it is made to the reviewing court." (*Careau & Co. v. Security Pacific Business Credit, Inc*. (1990) 222 Cal.App.3d 1371, 1386.) Logically, this showing can be made by materials in the record.

## II. Discussion

Pielstick argues that[4] Sagetree and its agent La Fever had a duty to warn him of a dangerous condition on the property, namely, the Uribe's vicious dog. We agree.

A claim for negligence consists of "'(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury. [Citation.]' [Citation.]" (*Phillips v. TLC Plumbing, Inc*. (2009) 172 Cal.App.4th 1133, 1139.) The relationship of a mobilehome park owner and the mobilehome owner who leases a space in the mobilehome park is governed by special rules (Civ. Code, § 798 et seq.) although except where so modified, the general rules of landlord-tenant law apply. (11 Miller & Starr, Cal. Real Estate (3d ed. 2004) § 31:16.)

In *Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504, the court recognized exceptions to the general rule that a landlord has no liability for a dangerous condition that arises after the tenant takes possession. *Uccello* observed that "[a] common element in these exceptions is that either at or after the time possession is given to the tenant the

---

[4] Plaintiffs do not make any arguments with respect to their remaining causes of action on appeal.

5

landlord retains or acquires a recognizable degree of control over the dangerous condition with a concomitant right and power to obviate the condition and prevent the injury. In these situations, the law imposes on the landlord a duty to use ordinary care to eliminate the condition with resulting liability for injuries caused by his failure so to act." (*Id.* at p. 511.) As explained in *Portillo v. Aiassa* (1994) 27 Cal.App.4th 1128, "[w]here there is a duty to exercise reasonable care in the inspection of premises for dangerous conditions, the lack of awareness of the dangerous condition does not generally preclude liability." (*Id.* at p. 1134.) "'Although liability might easily be found where the landowner has actual knowledge of the dangerous condition "[t]he landowner's lack of knowledge of the dangerous condition is not a defense. He has an *affirmative duty* to exercise ordinary care to keep the premises in a reasonably safe condition, and therefore must *inspect* them or take other proper means to ascertain their condition. And if, by the exercise of reasonable care, he would have discovered the dangerous condition, he is liable.""" (*Ibid.*)

Here, Sagetree, as landlord of the mobilehome park, owed a duty of care to invitees of tenants of its mobilehome park. Sagetree had a manager on the premises who had the authority to remove vicious dogs. Thus, Sagetree had a duty that extended to Pielstick as an invitee of persons who owned or leased mobilehomes in the park. The intricate facts here (Pielstick at one time leased a mobile home to the daughter of the owner of the vicious dog) does not absolve Sagetree of a duty to ensure that no vicious dogs are kept by tenants in the mobilehome park.

Further, with respect to the identity of the dog owner, defendants stress two points: plaintiffs' complaints were hopelessly uncertain as to whether the owner of the offending dog was his former tenant or his neighbor and mother of the former tenant—each bearing the name "Maria Uribe," and that the trial judge gave plaintiffs multiple opportunities to make their claims clear and did not abuse its discretion in failing to give plaintiffs yet another opportunity. Defendants indicate that there is nothing in the record demonstrating that neighbor Maria Uribe was the dog owner other than improper and

irrelevant declarations attached to plaintiffs' opposition to the demurrer. However, in describing defendants in the introductory paragraphs of the FAC, plaintiffs identify the "Maria F. Uribe" residing in the neighboring space number 239, and not their unit at number 240. The trial judge court's conclusion in its minute order that the pleading alleges that the dog owner was the former tenant and not the neighbor does not appear to be an accurate reading of the pleading, especially assuming the truth of the allegations as it had to in ruling on a demurrer.

Furthermore, although the trial court does not find facts or consider evidence in ruling on a demurrer, it may consider evidence to determine whether the plaintiff can amend. (See *Careau & Co. v. Security Pacific Business Credit, Inc.*, *supra*, 222 Cal.App.3d at p. 1386.) Pielstick asserts in the FAC that the "Maria Uribe" who owned the dog was their next-door neighbor, not their tenant Maria Uribe. Further, there were declarations attached to plaintiffs' opposition, from which one could have inferred that the owner of the dog at issue here was the neighbor and not plaintiffs' former tenant. These documents demonstrated an ability to amend to make the pleading clear, if it was not already. These factual assertions eliminate defendants' argument that Pielstick had his own duty to ensure that a vicious dog was not kept by Pielstick's tenants.

We conclude that Pielstick has made a sufficient allegation of facts as to negligence, to wit, that defendants had a duty to warn invitees of the mobilehome park that a tenant kept a vicious dog. Our ruling extends to Pielstick's loss of consortium claim as it is based on the negligence claim for Pielstick's injury.[5]

### DISPOSITION

The judgment is reversed with respect to Stephen H. Pielstick's negligence and loss of consortium claims, affirmed as to the other causes of action of the first amended

---

[5] As Patricia Pielstick did not appeal the court's judgment, and the time for her to appeal has expired, the trial court's judgment of dismissal of her claims is final and any of such claims are not resurrected by this appeal.

complaint asserted by Stephen H. Pielstick.  Stephen H. Pielstick is to recover his costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


BENDIX, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.